UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:11-cv-00394-FDW-DSC

PATRICK COLLINS, INC.,

    Plaintiff,

v.

JOHN DOES 1-26,

    Defendants.

**PLAINTIFF'S MEMORANDUM EXPLAINING WHY DISCOVERY IS PROPER EVEN WHEN A SUBSCRIBER CLAIMS HE OR SHE WAS NOT THERE AT THE TIME OF A RECORDED INFRINGEMENT[1]**

Many John Does seek to quash the subpoena or move for a protective on the basis that they were not home at the time of the infringement was recorded by Plaintiff's investigator, IPP Limited. These arguments should be rejected for the reasons set forth below.

**A.    The "I Was Not Home and Therefore Could Not Be the Infringer Argument" Is Premised on a Fundamental Misunderstanding of BitTorrent**

The assertion that the Defendant was not home at the time of the recorded infringement and therefore could not be the infringer is premised on a fundamental misunderstanding of the way BitTorrent works. BitTorrent continues to distribute data for a particular torrent file until the user commands its BitTorrent Client to stop distributing it. According to BitTorrent's own website:

> **Seeding** is where you leave your BitTorrent client open after you've finished your download to help distribute it (you distribute the file *while* downloading, but it's

---

[1] Although Plaintiff is filing this memorandum in support of its opposition to the objection of Charles Haden (Doe No. 7), for the convenience of the Court Plaintiff will reference this memorandum of law to support oppositions filed on similar grounds, and will, in addition, address any issues raised in those individual cases.

1

> even more helpful if you continue to distribute the full file even after you have finished downloading). Chances are that most of the data you got was from seeds, so help give back to the community! It doesn't require much - <u>BitTorrent will continue seeding until the torrent is removed.</u> (Underlining added.)

http://www.bittorrent.com/help/guides/beginners-guide. Further, under BitTorrent's tit-for-tat system, users are penalized by reduced download speed for not distributing data and are rewarded with increased download speed for distributing more than they download. See http://computer.howstuffworks.com/bittorrent2.htm.

Doe defendants who were not home or were out of town at the time of the detected infringement could very well have begun downloading the file a week or two before he or she went out of town, left his or her computer on while he or she was out of town, and continued to distribute the file for weeks or months, including the time period he or she was out of town. That is the nature of BitTorrent. The "hit date" in the Complaint is merely the date that Plaintiff's investigator recorded the infringement. It does not speak to the date that the Doe Defendant commenced the infringement. Further, Plaintiff's investigator has numerous "hit dates" for many of the Doe defendants. And, Plaintiff's investigator frequently has evidence that many of the Doe defendants were infringing different copyrights that are not included in this suit.

Even if the Doe defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Doe defendant's internet service. Almost always, this is a family member such as a husband, wife, son or daughter. Copyright infringement is a tort and under black letter tort law parents are liable for their children's torts.

Ultimately, these assertions amounts to nothing more than a denial and Plaintiff should not be precluded from investigating the basis for the denial. Moreover, Plaintiff can amend its complaint to plead negligence. See <u>Liberty Media Holdings, LLC v. Swarm of November 16, 2010</u>, 2011 WL 1597495, *4 (S.D.Cal.,2011) holding:

> "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." Mintz v. Blue Cross of Cal., 172 Cal.App.4th 1594, 92 Cal.Rptr.3d 422, 434 (Cal.Ct.App.2009) (citation omitted).
>
> Plaintiff alleges that Defendants accessed, or controlled access, to the Internet connection used in performing the unauthorized copying and sharing of Plaintiff's copyrighted work. Compl. ¶ 374. Plaintiff further alleges that Defendants failed to adequately secure their Internet access accounts, and this failure to prevent illegal use of their accounts "constitutes a breach of the ordinary care that reasonable persons exercise in using an Internet access account." Compl. ¶¶ 375–76. Plaintiff alleges that, due to this unsecured access, others were allowed to unlawfully copy and share Plaintiff's copyrighted work, thereby interfering with Plaintiff's exclusive rights and causing Plaintiff financial harm. Compl. ¶¶ 378–80. <u>Accordingly, Plaintiff's negligence cause of action could withstand a motion to dismiss.</u> (Underlying added.)

    **B.**     **There Is No Equity In An Argument Aimed At Denying Discovery On the Basis That the Doe Defendant Is Merely the Subscriber**

When a person runs a red light, law enforcement sends a picture of the license plate along with a ticket to the car's owner. This is proper because the registered owner is by far the most likely driver. Nevertheless, just like a car's owner may defend by asserting that he was not the driver, so too may an IP Address owner defend by asserting that he was not the file sharer but merely the subscriber. At a minimum, however, a licensed owner who lends its car or internet to a third party must assist to identify the borrower that misused its property. Any argument to the contrary is devoid of equity. Moreover, as stated above, Plaintiff can always choose to sue under a negligence theory.

    **C.**     **Plaintiff Faces a Serious Problem With Online Infringement**

From reports received by counsel from Plaintiff's investigator, IPP Limited, Plaintiff knows with certainty that Plaintiff's movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000

3

times a month. Plaintiff works hard on its movies which contain a significant amount of creativity.

### D. The Executive Branch, Congress, Federal Courts And Copyright Owners Are All Very Concerned With The Jobs And Money Lost From Online Piracy

On June 22, 2010, Vice President Biden, speaking for the Executive Branch, said of on-line piracy "[t]his is theft, clear and simple."[2] "It's smash and grab, no different than a guy walking down Fifth Avenue and smashing the window at Tiffany's and reaching in and grabbing what's in the window." Id. "[O]n February 16, 2011, the Senate Judiciary Committee, led by Chairman Patrick Leahy (D-Vt.), held a hearing . . . about the growing problem of online infringement. . . ."[3] Leahy said "[t]he problem of online infringement is real; it is substantial; and it is a drain on our economy, which costs American jobs." Id. He continued "[c]opyright piracy and the sale of counterfeit goods are reported to cost the American economy billions of dollars annually and hundreds of thousands of lost jobs." Id. Regarding jobs, in Suntrust Bank v. Houghton, 268 F.3d 1257, 1260-63 (11th Cir. 2001), the Eleventh Circuit explaining the history and purposes of the Copyright Act stated that "[t]his limited grant [a copyright] 'is intended to motivate the creative activity of authors ... by the provision of a special reward." Right now – the public policy underlying copyright law is at risk insofar as the anticipated infringement of Plaintiff's works is discouraging it and other movie studios from investing in new works. This not only costs jobs, it deprives people of the ability to watch movies they would otherwise enjoy.

Courts should and are overwhelmingly supporting copyright owners efforts to combat infringement by ruling against motions to quash. See e.g., Call of the Wild v. Does 1-1062, 770

---

[2] See http://www.reuters.com/article/2010/06/22/us-usa-trade-web-idUSTRE65L3YN20100622
[3] See http://www.techzone360.com/news/2011/02/16/5318701.htm.

4

F.Supp.2d 332 (D.D.C. 2011) (36 page opinion addressing all of the issues raised in pre-Doe identification BitTorrent litigation.)  Significantly, the Call of the Wild Court denied all of the motions to quash, ruled in favor of copyright owners on the joinder issue, the free speech issue, the right to remain anonymous issue [Doe's who file motions do not have that right], allowed Plaintiff to use the long arm statute, and held that internet service providers cannot refuse to comply with subpoenas on the basis that it is unduly burdensome.  Through holdings denying motions to quash, courts are contributing to the resolution of the problem of "[c]opyright piracy . . . reported to cost the American economy billions of dollars annually and hundreds of thousands of lost jobs."  See Senator Leahy's press release, cited above.

    **E.**    **Conclusion**

For all the foregoing reasons, Plaintiff respectfully requests that the court deny all motions filed by Doe defendants claiming that they could not be the infringer because they were not home at the time of the recorded infringement.  Ultimately, these assertions amounts to nothing more than an untested denial; and, the basis of this denial is premised on a fundamental misunderstanding on the nature of the technology.  In short, this defense does not undermine the rationale for granting the motion for leave to serve the subpoena and should be denied.

Dated: October 12, 2011

                                        LAW OFFICE OF JAMES C. WHITE, P.C.

                                        /s/ James C. White
James C. White
N.C. Bar # 31859
4819 Emperor Blvd., Suite 400
Durham, NC 27703
P.O. Box 16103
Chapel Hill, NC 27516
jimwhite@jcwhitelaw.com
(919) 313-4636
(919) 246-9113 fax

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ James C. White

## SERVICE LIST

1. Charles Haden
   115 Centre Court Road
   Charleston, WV 25314

7

Case 3:11-cv-00394-FDW-DSC   Document 12   Filed 10/12/11   Page 7 of 7