**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:11-cv-00394-FDW-DSC**

PATRICK COLLINS, INC.,

              Plaintiff,

v.

JOHN DOES 1-26,

              Defendants.

## DECLARATION IN OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA

I, JAMES C. WHITE, DO HEREBY DECLARE:

1.      My name is James C. White, and I am over the age of 18 and am otherwise competent to make this declaration.

2.      I have been retained by Plaintiff as counsel in this matter.

3.      I have personal knowledge of the facts stated in this declaration.

4.      Attorneys for Plaintiffs from across the country have had scores of conversations with different lawyers from all over the country who call threatening to file these motions disingenuously asserting prejudice to defendants being identified in a joined case.

5.      Almost without fail, when Plaintiff states that it will voluntarily sever the defense counsel's client and sue the person individually, the defense counsel backs down and admits that his or client being sued individually is not in his or her client's best interests.

1

6.       As part of a strategy aimed at reducing the number of severance motions, Plaintiff has frequently and will continue to voluntarily dismiss some movants that seek to sever and sue these movants individually.[1]

7.       Plaintiff's strategy of giving Doe Defendants what they ask for, but clearly do not want, has been working for counsel and Plaintiff hopes it will become known to pro se Doe Defendants over the long term.[2]

8.       Plaintiff's strategy has been working insofar as Plaintiff has reached gentleman's agreements with a hand full of lawyers who file these motions routinely.

9.       Most of these motions are filed by pro se litigants and cut and pasted from BitTorrent defense kits or otherwise copied.

10.      According to Graham Seifert, one of the primary author's of these motions, "[m]y dream would be to have 10,000-20,000 people file all three documents [motions] to the lawyers and severely cripple the entire process."   See http://lawvibe.com/uscg-sues-bittorrent-users-graham-syfert-of-affinity-law-firm-defends/.

11.      A simple internet search reveals that there are numerous BitTorrent Defense Kits available which promote these types of motions, and that there are innumerable anti-copyright interest groups also promoting these types of motions.

12.      These motions are expensive to defend against.  Indeed, many such motions intentionally raise issues that have absolutely nothing to do with the subject matter before the court or matter which no court has ever held justifies quashing the motion.  Consequently, Plaintiff has to spend substantial resources arguing against irrelevancies and abstractions.

---

[1] Plaintiff and undersigned counsel *sincerely* apologize to the Court for not explaining its strategy through a notice that could have been filed in advance of this Court's order severing the Defendants.
[2] See Plaintiff's declaration filed in support, this strategy has been working.

2

13.    Plaintiff has received hundreds of cut and paste motions to sever or quash or both in similar litigations across the country.

14.    The cut and paste motions have been put on torrent websites and other websites containing instructions on how to complete these and are being downloaded by the Doe Defendants and their counsel in these matters.  See http://www.kat.ph/search/law%20firm/.  See also Maverick Entertainment Group, Inc. v. Doe --- F.Supp.2d ----, 2011 WL 1807428 (D.D.C. 2011) finding "the Court recognizes that "at least two" putative defendants (Jasmin Silva, ECF Nos. 56; Mark Benavides, ECF No. 92) have "substantially copied" and filed briefs prepared and submitted by attorney Eric J. Menhart.

15.    The law firm of Fletcher, Heald & Hildreth, PLC which promotes a free internet weighed in with further analysis about motions to quash asserting that "any bump in the litigation road costs money and devalues the lawsuit."See :http://www.commlawblog.com/2011/04/articles/intellectual-property/trolls-on-a-roll/.

16.    From reports received by Plaintiff's investigator, IPP Limited, undersigned knows that Plaintiff's movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month.

17.    Through similar copyright infringement suits filed by Plaintiff's lawyers across the country, a police department running a covert investigation was identified as a John Doe defendant; Plaintiff voluntarily dismissed that John Doe.  Many John Doe defendants are destitute.  Several of the John Doe Defendants have died prior to being identified.  Several John Does have been public or political figures who Plaintiff did not to choose to sue.  Myriad IP addresses trace back to multiple dwelling units such as apartment complexes, universities, coffee shop Wifi hotspots, casinos and domestic violence shelters.  IT personnel at these entities have

3

often tried to trace hits to actual individuals, but it most often proves impossible.  Plaintiff also does not pursue active duty military personnel who are currently oversees.

18.      Plaintiff loses 10-15% of the Doe identities it subpoenas nationally due to ISP data failure or deletion issues.

19.      Due to the dynamic ISP issue, Plaintiff has sued the same Doe Defendant innumerable times in several joined suits across the country.

20.      From statistics suing thousands of people nationally, Plaintiff knows that in any given joined suit 35-55% of the Doe Defendants will settle very early in the litigation.

21.      The settlement demand that Plaintiff makes of Doe Defendants is consistent with the low end of the amounts awarded in the Capitol and Sony cases plus the legal fees and costs associated therewith.

22.      Increasing the costs associated with this litigation by forcing Plaintiffs to file individual suits would only increase the settlement demands and make settlements less probable.

23.      The amount of labor and expense associated with BitTorrent peer-to-peer copyright litigation may make it prohibitively expensive to sue IP addresses prior to knowing that any particular IP address resolves to a solvent individual who could be served.

24.      A movant seeking severance self identifies himself or herself as likely being a person worth suing individually. Therefore, Plaintiff is willing to proceed against these movants in individual suits as part of the strategy set forth in this declaration.

25.      Plaintiff's investigators use the hash value as a digital fingerprint that enables Plaintiff to ensure that all of the infringements alleged in this suit arise from the exact same unique version of Plaintiff's movie as evidenced by the cryptographic hash value.

4

26.     Many of Plaintiff's movies have been initially seeded several times.  Each seeding produces its own independent cryptographic hash value and swarm.  Here, Plaintiff has only sued Defendants in the exact same swarm.

**FURTHER DECLARANT SAYETH NAUGHT**

**<u>ATTESTATION</u>**

**PURSUANT TO 28 U.S.C. § 1746**, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 12th day of October 2011.

By: <u>/s/ James C. White</u>

5

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ James C. White

## SERVICE LIST

1. Charles Haden
   115 Centre Court Road
   Charleston, WV 25314